456 A.2d 569

**COMMONWEALTH of Pennsylvania**

v.

**Joseph P. PUCHALSKI, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1982.

Filed Feb. 11, 1983.

Petition for Allowance of Appeal Denied June 8, 1983.

200

Michael R. Sweeney, Media, for appellant.

Vram Nedurian, Jr., Assistant District Attorney, Media, for Commonwealth, appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from judgment of sentence imposed following appellant's conviction of assault, indecent assault, and involuntary deviate sexual intercourse. Appellant argues, first, that his conviction should be reversed, and either he should be discharged because the evidence was insufficient, or he should be granted a new trial because the lower court erred in admitting hearsay testimony, and second, that his sentence should be vacated because before sentencing him, the lower court required him to submit to a polygraph examination. We affirm the conviction but vacate the sentence and remand for resentencing.

The lower court's opinion adequately disposes of appellant's arguments for reversal of his conviction. We shall therefore confine our discussion to appellant's argument that his sentence should be vacated.

On December 5, 1980, appellant was brought before the lower court for sentencing. A pre-sentence investigation report had been ordered and had been received. The lower court opened the proceedings by stating as follows:

Initially I want to indicate in this matter that this case was tried sometime ago and that during the course of the trial it became apparent that there was a substantial issue to be determined, the issue of credibility and the jury resolved that issue in favor of the victim and against Mr. Puchalski.

The situation as I remember the trial was interesting in that the offense was not charged until an extended period of time after the actual offense took place. The charge was brought some months later evidently.

The jury found against Mr. Puchalski and the Court ordered a psychiatric evaluation for the purpose of setting bail. The psychiatric evaluation in essence seemed to indicate that there was a problem with Mr. Puchalski and one that was probably related to the fact that he maintained that he did not commit this crime and that

psychiatric therapy might be necessary to have him adjust to the fact that he had been convicted for a crime which he maintained he did not commit.

The Court has reviewed this matter in its entirety and feels that the jury verdict was supported by the evidence. The question was one of credibility for the jury to determine. The Court felt under the circumstances it could not reverse the verdict of the jury.

The circumstances have given the Court difficulty as far as sentencing is concerned and because they are in my experience most unusual, I am going to inquire of the defendant whether he would undergo testing for the purposes of assisting the Court in ultimately disposing of this matter.

Specifically, I'm speaking in terms of a polygraphic test and/or a sodium pentothal test. The defendant is 19 years of age and obviously this sentence of this Court is going to have a substantial impact.

The crime was a nasty crime and this Court feels it would be of assistance to the Court in sentencing and I am going to ask you, Mr. Sweeney to discuss with your client whether he is willing to undergo such tests so that the Court can have additional information from which to make its ultimate decision.
R.R. 329a–331a.

Counsel for appellant stated that he "believe[d] the court's request is in substance saying I have such terrible doubts about this case that I cannot resolve it on the record before—." R.R. 331a. The court, however, interjected, saying:

No. You are misreading what I'm saying. The jury resolved the issues. They were not for me to resolve, but it is my job to sentence and the crime was a nasty crime and the crime by its very nature requires a penalty which fits the crime. I am seeking assistance in the determination of what the extent of that penalty will be.
R.R. 332a.

Further colloquy ensued in the course of which there was discussion about the fact that before the trial, first the Commonwealth, and then, on the advice of new counsel, appellant had requested a polygraph examination, with appellant refusing the Commonwealth's request, and the Commonwealth then refusing appellant's. The proceeding was then continued so that appellant's counsel could discuss with appellant the court's request that he submit to a polygraph examination.

At the continued proceeding, on December 12, 1980, counsel for appellant stated that appellant had agreed to submit to a polygraph examination despite the fact that counsel "recommended strongly and frequently against it." R.R. 340a. Counsel stated that while he believed the court was entitled to require appellant to submit to psychiatric examination, he did not believe "a polygraph and sodium pentothal test ... [were] a proper basis for sentencing." R.R. 341a; that appellant was "under duress to agree to [the court's request that he submit to a polygraph examination] ... [for] [i]f he refuses ... it appears that he is hiding the truth or in some way impliedly admitting his guilt by doing that. That could affect the sentence or in his own mind he could believe that would affect the sentence." *id.;* that the court's request was "an attempt to ascertain the truth of [appellant's] guilt or at least the truth of what he testified to in Court." *id.*; that since the result of a polygraph examination was not admissible at trial, it should not be admissible at sentencing; R.R. 342a; and that if the result "comes back inconclusive or a bad result," appellant's appeal would be "tainted," *id.* Appellant acknowledged to the lower court that counsel had told him all these reasons, but he said that nevertheless, he wished to submit to a polygraph examination.

The assistant district attorney also indicated her objection to the court's request that appellant submit to a polygraph examination. Thus she stated "for the record [that] our office is concerned about the precedent of this case.... From the victim's point of view ... the concern was that it

appeared that your Honor was bending over backwards to give the defendant every opportunity." R.R. 343a–344a.

The court nevertheless stated that it would "determine who will administer the test," R.R. 344a, and the proceeding was continued so that the examination could be conducted.

On June 17, 1981, appellant submitted to a polygraph examination on the issue of "whether or not [he] was telling the truth when he stated he had no guilty knowledge of nor did he participate in the attack on [the victim]. . . ." R.R. 327a. In the opinion of the examiner, appellant's reactions to the test questions on this issue showed "that he is not telling the truth in this matter."

The report of the examination was forwarded to the lower court, and on June 19, 1981, appellant was brought before the court for sentencing. Counsel for appellant reiterated his objections to the polygraph examination and to the use of the result. The lower court, however, stated:

> Well, in the instant situation, Mr. Sweeney, the polygraph examination that was done merely confirmed what the jury indicated in this case. . The matter is now before me as if the jury had convicted [appellant] and it's appropriate for the Court to determine what is appropriate in this situation based upon the judge's finding. That's exactly what I intend to do.

> The polygraph may have worked to [appellant's] advantage had it come out differently but it certainly doesn't work to his disadvantage because the matter is before me on a conviction by a jury and I have to sentence accordingly.

> R.R. 353a.

Sentence was then imposed.

. The first issue raised by these proceedings is whether the lower court requested appellant to submit to a polygraph examination because the court, despite its conclusion that the evidence was sufficient to support the verdict, remained doubtful of appellant's guilt. Appellant's argument that this was the reason for the court's request would appear to

be supported by some of the court's remarks during the sentencing proceedings, in particular, the court's initial statement that the "most unusual" circumstances—evidently alluding to the "extended period" between the offense and the charge—"have given the Court difficulty as far as sentencing is concerned," R.R. 330a, and its statement at the last hearing that the result of the polygraph examination "merely confirmed what the jury indicated in this case," R.R. 353a. However, when counsel for appellant suggested that the reason for the court's request that appellant submit to a polygraph examination was that the court had "terrible doubts," R.R. 331a, the court replied, "You are misreading what I'm saying...." R.R. 332a. We take this to mean that the court was *not* requesting the examination to relieve it of any doubt of appellant's guilt, and we shall accept the court's statement.

The second issue is whether appellant's decision to submit to a polygraph examination was so voluntary that he cannot now complain about it on appeal. Without doubt, in some sense appellant's decision was voluntary: the court did not in so many words order but rather asked appellant whether he was willing to submit to the examination; it gave appellant time to consult with counsel about whether he should submit; and after consulting with counsel, and against counsel's recommendation, appellant told the court he wished to submit. In this regard, we note that in its opinion the court states that it "inquired of the Defendant as to whether or not he still [as he once had, before the trial] wished to submit to a polygraph examination." Slip op. at 8, Brief for Appellant at 64.

■ We are nevertheless satisfied that appellant has not waived his right to object to the examination. In view of the court's power to determine the limits of appellant's liberty, its "inquir[y]" cannot have been understood by appellant as anything other than a requirement that he submit to examination. A defendant who stands before a court, about to receive sentence, is in a most vulnerable

position. He is for practical purposes at the court's mercy. As counsel for appellant quite correctly stated, in arguing to the lower court: "If he refuses [the court's request that he submit to a polygraph examination] ... it appears that he is hiding the truth or in some way impliedly admitting his guilt...." R.R. 341a. It would be most unfair to hold that if such a defendant is not bold enough to refuse, he will lose his right to object to the request. *Cf. Commonwealth v. Taylor,* 494 Pa. 399, 431 A.2d 915 (1981) (Where psychological coercion overbears a criminal defendant's will, resulting statements will be suppressed).

■ The third issue is whether the lower court was entitled to receive the result of the polygraph examination. As appears from the portions of the sentencing proceedings that we have quoted above, the court stated that it wished the result because it was "seeking assistance in the determination of what the extent of [the] penalty will be." R.R. 322a. However, we cannot accept this statement.

Certainly the court was entitled to such assistance as would enable it to form a judgment of appellant's character, for the essence of a just sentence is one that takes into account both the circumstances of the offense and the offender's individual characteristics, as these bear upon the degree of his culpability and the possibility of his rehabilitation. *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977); *Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976); *Commonwealth v. Doyle,* 275 Pa.Super. 373, 418 A.2d 1336 (1979); 42 Pa.C.S.A. §§ 9701–81 (1982); *Commonwealth v. Wicks,* 265 Pa.Super. 305, 401 A.2d 1223 (1979). However, a polygraph examination could not afford such assistance. As counsel for appellant argued to the lower court, a psychiatrist could advise the court as to appellant's character, but a polygraph examination couldn't. For it could only concern whether appellant had committed the offense, and any assistance in that regard was improper; the jury had already decided who had committed the

offense, and the lower court, correctly, had upheld the jury's verdict.

Furthermore, a polygraph examination could afford no assistance even on whether appellant had committed the offense. For one can have no confidence in the reliability of the result of the examination. It has therefore repeatedly been held that the result is inadmissible for "any purpose," *Commonwealth v. Gee*, 467 Pa. 123, 141, 354 A.2d 875, 883 (1976); *Commonwealth ex rel. Riccio v. Dilworth*, 179 Pa.Super. 64, 115 A.2d 865 (1955), even when stipulated to, *Commonwealth v. McIntosh*, 291 Pa.Super. 352, 357, 435 A.2d 1263, 1265 (1981) ("We still do not discern the logical process whereby unreliable evidence becomes reliable merely through stipulation."); *Commonwealth v. Pfender*, 280 Pa.Super. 417, 421 A.2d 791 (1980) (collecting cases).

■ The remaining issue is whether the lower court's request that appellant submit to a polygraph examination and its receipt of the result of the examination require that the sentence be vacated and the case remanded for resentencing. In its opinion the lower court expresses the view that vacation and remand are not required. Thus it states:

> The reality of this situation is that the polygraph results did not prejudice [appellant]. [Appellant's] sentence was not based upon the results of the polygraph examination. The sentence would have been the same even if the test had never been given.

Slip op. at 10, Brief for Appellant at 66.

However, we cannot accept this statement either.

In the first place, it is essential to the sentencing process, not only that the sentence imposed be just, but that it be perceived as just, by the victim, the offender, and the community generally. *Commonwealth v. Riggins, supra.* Here, by requesting a polygraph examination and receiving its result, the lower court precluded, or at least interfered with, perception of the sentence as just. As the assistant district attorney argued to the lower court, from the victim's point of view it could only appear, no matter what the

court said its purpose was in requesting a polygraph examination, that the court "was bending over backwards to give [appellant] every opportunity," R.R. 344a. For since the examination could only concern appellant's guilt, the victim could only conclude that appellant was being given the opportunity to persuade the court that despite the jury's verdict, he was not guilty. From appellant's point of view, as discussed above, the court's request put appellant in a position in which he felt he had to assent to the court's request, despite his counsel's recommendation. And from the community's point of view especially perhaps, but also from the victim's and appellant's, the court's request injected into the sentencing process a procedure consistently condemned by the courts as unreliable and therefore incompatible with the careful and difficult deliberations attendant upon the formulation of a just sentence.

In addition, the lower court's statement that "[t]he sentence would have been the same even if the test had never been given" is difficult to reconcile with other statements by the court. As noted above, at the sentencing proceeding the court stated that "[t]he polygraph may have worked to [appellant's] advantage had it come out differently but it certainly doesn't work to his disadvantage because the matter is before me on a conviction by a jury and I have to sentence accordingly." R.R. 353a. And in its opinion the court states that "[t]he Court also made it clear that [appellant] could only have benefited by the test and that it could not have worked to his disadvantage." Slip op. at 10, Brief for Appellant at 66. (The court does not indicate where in the record it did this; we assume it had in mind the passage just quoted from page 353a of the Reproduced Record.) But if "[t]he polygraph may have worked to [appellant's] advantage," then the sentence would *not* "have been the same if the test had never been given." For the court's reference to "advantage" can only mean that if appellant had "passed" the examination, instead of "failing" it, he would have received a more favorable sentence. Indeed,

the lower court acknowledges as much, for in its opinion it states:

> Such benefits [*i.e.* the benefits from submitting to the polygraph examination] *included not only the addition-al and somewhat persuasive arguments which would be available to [appellant] at the time of sentence if the test results were favorable to [appellant], a situation which the Court had contemplated* and was willing to face given these circumstances, but also the possibility that the results of the test might help [appellant] to admit his guilt and come to terms with the reality of his situation. This is, of course, the universally accepted first step in the rehabilitation process.

Slip op. at 10, Brief for Appellant at 66 (emphasis added).

■ Finally, it is well-settled that the imposition of a criminal sentence based on misinformation contravenes due process of law:

> The information used by a judge in imposing sentence need not necessarily meet the standards of admissible evidence at trial; however, the due process clause does apply to the sentencing procedure [citing *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States ex rel. Jackson v. Myers*, 374 F.2d 707 (3d Cir.1967); *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) ]
>
> . . .
>
> The critical fact in each of these cases [in which resentencing was ordered on due process grounds] was that the record revealed the presence of misinformation.

*Commonwealth v. Shoemaker*, 226 Pa.Super. 203, 212–213, 313 A.2d 342, 347–348 (1973), *aff'd*, 462 Pa. 342, 341 A.2d 111 (1975).

*See also Commonwealth v. Walker*, 286 Pa.Super. 239, 428 A.2d 661 (1981).

Given its unreliability, the result of a polygraph examination must be regarded as impermissible "misinformation."

Where it "reasonably appears" that the court has relied upon an impermissible factor,

[t]he correct inquiry ... is *not* whether the trial court considered legitimate factors in fixing sentence, but whether it considered *only* such factors....

... [I]n making this determination it is not necessary that an appellate court be convinced that the trial judge *in fact* relied upon an erroneous consideration; it is sufficient to render a sentence invalid if it *reasonably appears* from the record that the trial court relied in whole or in part upon such a factor.

*Commonwealth v. Bethea*, 474 Pa. 571, 579–580, 379 A.2d 102, 106–7 (1977) (emphasis added).

*See also Commonwealth v. Schwartz*, 275 Pa.Super. 112, 418 A.2d 637 (1980). Here it does "reasonably appear[ ] from the record" that the lower court "relied in whole or in part" upon the result of the polygraph examination. This conclusion is implicit in the lower court's insistence upon the examination, over the objections of both appellant's counsel and the assistant district attorney; and it is explicit in the court's reference in its opinion to "the additional and some-what persuasive arguments which would be available to [appellant] at the time of sentence if the test results were favorable to [appellant]...."

In closing, we wish to emphasize that our disposition of this case rests solely on the ground that the *procedure* employed in imposing appellant's sentence was improper: a sentencing judge may neither request nor consider the results of a polygraph examination in imposing sentence. We do not suggest that the *content* of appellant's sentence is in any way objectionable. We have not considered that issue. *See Commonwealth v. Wicks*, 265 Pa.Super. at 314 n. 8, 401 A.2d at 1227 n. 8.

The conviction is affirmed, but the judgment of sentence is vacated and the case is remanded for resentencing. Jurisdiction is relinquished.