2002 SD 120

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Janice STEVENSON, Defendant and Appellant.**

**No. 22126.**

Supreme Court of South Dakota.

Considered on Briefs April 22, 2002.

Decided Oct. 2, 2002.

Mark Barnett, Attorney General, John M. Strohman, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Patrick M. Ginsbach of Farrell, Farrell & Ginsbach, Hot Springs, South Dakota, Attorneys for defendant and appellant.

**PER CURIAM.**

[¶ 1.] Janice Stevenson appeals her sentence for one count of second degree arson. We affirm.

### FACTS

[¶ 2.] In June 2001, Stevenson was charged with one count of second degree arson in connection with a devastating forest fire in the Black Hills in the summer of 2000.* The charge was specifically related to the burning of a cabin owned by a couple in Custer County. Plea bargaining followed the filing of the charge and the State and Stevenson ultimately entered into a four page plea agreement. The agreement contained provisions requiring Stevenson to enter a guilty plea, to cooperate in the plea proceedings, to plead guilty in federal court to federal charges relating to the same fire and to agree to the maximum federal sentence for her federal offenses. For its part, the State agreed to grant Stevenson use immunity for any arson related disclosures during her debriefing and to request a seventeen year penitentiary sentence. In addition, the plea agreement contained the following specific provisions pertinent to this appeal:

3. [Stevenson] will fully and truthfully apprise law enforcement officials of her

---

* The arson was charged under SDCL 22–33–2 which provides: "Any person who intentionally sets fire to or burns or causes to be burned any occupied structure under circumstances which would not amount to arson in the first degree is guilty of arson in the second degree. Arson in the second degree is a Class 2 felony." The maximum penalty for a Class 2 felony is twenty-five years in the state penitentiary and/or a twenty-five thousand dollar fine. SDCL 22–6–1(4).

involvement with forest fires set in South Dakota for the years previous to 1993 including the specific names, dates, times and places surrounding such activities. Any material misrepresentation or omission made will result in revocation of the plea bargain agreement in the State's discretion.

4. [Stevenson] will, at the request of law enforcement, voluntarily submit to a polygraph examination concerning her involvement with forest fires set in South Dakota for the years previous to 1993. [Stevenson's] failure of this test may result in a revocation of this agreement in the State's discretion.

* * *

This grant of immunity is expressly conditional upon [Stevenson's] complete and open honesty in the scope of her cooperation with law enforcement. Any material misrepresentation or omission made by [Stevenson] to law enforcement shall be grounds for revocation of this agreement. If this agreement is revoked for any reason set forth in this agreement, [Stevenson] will lose her grant of immunity and will be prosecuted to the fullest extent of the law. In that event, any and all statements made or evidence obtained pursuant to this agreement, including any statements made during any court proceeding, may then be used against [Stevenson] consistent with *United States v. Mezzanatto*, 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995).

* * *

The parties specifically acknowledge that the length and conditions of any sentence are solely within the discretion of the sentencing judge, and that no promises as to length or type of sentence have been made to [Stevenson] by the State.

[¶ 3.] The plea agreement was signed by Stevenson, her counsel and the prosecutor on the same date as Stevenson's arraignment, May 25, 2001. During the arraignment, the trial court advised Stevenson of the charge, the maximum possible penalty, and her constitutional rights. Stevenson acknowledged her understanding of these matters. Stevenson's counsel then explained various aspects of the plea agreement as did the prosecutor who noted that, "the State is agreeing to ask for 17 years which would be concurrent, that Miss Stevenson would go serve her time in the Federal custody." Prior to accepting Stevenson's plea, the trial court initiated the following exchange to insure her understanding of the non-binding nature of the sentencing agreement:

THE COURT: You understand that I can impose—this is not binding on the Court, I assume.

MR. BACHAND [the prosecutor]: It is not, Your Honor.

MR. CONNELLY [defense counsel]: That's correct.

THE COURT: I may, if I choose to, impose 25 years in the state penitentiary.

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you understand that you may be forced to serve that if you don't get parole or good time, that kind of thing?

THE DEFENDANT: I understand.

After this discussion, a factual basis was provided for Stevenson's plea which was accepted by the trial court.

[¶ 4.] Following the arraignment and prior to sentencing, Stevenson submitted to a polygraph examination pursuant to the requirements of the plea bargain.

During the course of that examination, Stevenson admitted her arson in three prior fires in Wyoming. However, she denied setting a pre 1993 fire in the Black Hills of South Dakota known as the "Westberry Trails fire." The polygraph indicated Stevenson was untruthful in this denial.

[¶ 5.] At the sentencing hearing on August 22, 2001, the State presented testimony from the polygraph examiner to establish Stevenson's deception and violation of the plea agreement. On that basis, the State sought leave to depart from its plea agreement to request a sentence of seventeen years. The trial court ruled from the bench that there had been a violation of the plea agreement sufficient to allow the State to withdraw its pledge not to seek an aggravated sentence. The State then presented testimony from the victim of the arson and, referencing the severity of the forest fire caused by Stevenson, argued for a lengthy penitentiary sentence to run consecutive to her federal sentence. Thereafter, the trial court heard a statement from Stevenson in which she expressed perfunctory remorse for her actions. The trial court then imposed its sentence with the following pertinent comments:

> I'm not sentencing you today based upon whether you did or did not commit the other fire. I'm doing this solely based upon what you told me you have done and what the presentence investigation reveals, not the Westberry Trails fire because that's not what we're here for. The only reason that's an issue is a question of truth, not a question of being a pyromaniac or being an arsonist.

> \* \* \*

> [S]even percent of the state—the forest was lost, which is a huge chunk of the beautiful Black Hills which everyone here respects and appreciates. Forty-two million dollars in losses, direct loss-es. That doesn't count the beauty and the critters and creatures and the grass and trees and the flowers and the decades it will take for those to commence or to return to where they were.

> \* \* \*

> Only by the grace of God was someone not killed or injured seriously in this. Fire fighters risked themselves to keep it from spreading which it did because of the real abandoned area, the natural area. The isolated area it was able to grow and prosper, the fire was. You knew that when you started it.

> I don't accept you've taken responsibility for it.

[¶ 6.] With these and other similar comments, the trial court sentenced Stevenson to twenty-five years in the penitentiary, concurrent with her federal sentence, plus restitution. Stevenson appeals.

## ISSUE

[¶ 7.] **Was the trial court clearly erroneous in finding that Stevenson breached her plea agreement?**

[¶ 8.] Stevenson advances several arguments to establish that the trial court was clearly erroneous in finding that she breached her plea agreement and that the State could depart from the agreement and seek an aggravated sentence.

[¶ 9.] Generally, plea agreements are contractual in nature and are governed by ordinary contract principles. *See Margalli–Olvera v. I.N.S.,* 43 F.3d 345, 351 (8th Cir.1994). Whether a contract has been breached is an issue of fact for the trier of fact to resolve. *Moe v. John Deere Co.,* 516 N.W.2d 332, 335 (S.D.1994). A trial court's findings of fact are reviewed under the clearly erroneous standard. *State v. Webster,* 2001 SD 141, ¶ 19, 637 N.W.2d 392, 397.

■ [¶ 10.] Stevenson first contends that the trial court's finding of a breach of the plea agreement is clearly erroneous because it entered no written findings or conclusions for this Court to review for the existence of clear error. This Court has previously expressed its preference for the entry of written findings of fact and conclusions of law on certain issues resolved by trial courts. *See e.g. State v. Albright,* 418 N.W.2d 292, 294 (S.D.1988)(Court insists on separate, appropriate and specific findings of fact and conclusions of law on suppression issues in order to aid appellate review and insure against speculation and conjecture). Notwithstanding such expressions, this Court has accepted verbal findings and conclusions where the record leaves no room for speculation and conjecture concerning what the trial court found or concluded. *See e.g. State v. Hartley,* 326 N.W.2d 226, 228 (S.D.1982)(whether findings and conclusions are formally entered or orally made on the record, they must be such that there is no room for speculation and conjecture concerning what the trial court found or concluded).

[¶ 11.] Here, a review of the record leaves no doubt that the basis of the trial court's finding of a breach of the plea agreement was Stevenson's failure of the polygraph examination. In that regard, the trial court specifically ruled from the bench as follows:

> The Court takes the agreement as a contract between the parties. It ultimately in the mind of this Court sets up the opportunities for the State to set aside its agreement to not aggravate beyond the 17.5 in the event the State feels because it's clear it's discretionary that there is a violation of the agreement. The Court is cautious about the reliance or consideration of the polygraph which is a tool that is not exact in nature nor is it admissible generally speaking before the Court. But at least

> under these circumstances with the contract agreement between the parties and the defendant that there is basis for the State to believe that they have a right to and they could should they wish to withdraw their agreement not to seek greater than the 17.5. I find that there has been a violation sufficient to allow the State to withdraw its agreement not to aggravate.

Given these oral findings, there is no clear error in the trial court's finding of a breach even absent written findings of fact and conclusions of law on the issue.

■ [¶ 12.] Stevenson next contends that there is clear error in the finding of a breach because the polygraph examiner did not have any investigative information about the Westberry Trails Fire when he questioned her. The relevance of argument over the examiner's lack of investigative information is puzzling in light of the obligations imposed on Stevenson by the plea agreement and her performance of those obligations. Stevenson agreed to truthfully apprise law enforcement of her involvement with pre 1993 forest fires in South Dakota and to pass a polygraph examination concerning these matters. Pursuant to these requirements, the polygraph examiner testified that he asked Stevenson if she started the Westberry Trails Fire and she answered "no." The examiner then asked Stevenson if she was the person who started the Westberry Trails Fire and, again, she answered "no." Finally, the examiner asked if, other than some fires in Wyoming that Stevenson had already admitted setting, she had started any other wildland fires prior to 1993. Once more, Stevenson answered "no." In evaluating these answers at the hearing on this matter, the examiner testified as follows:

Q We have the three questions you asked her. How many specific charts did you run? In other words, how many times did you go through this with her with those questions?

A With the Westberry Trails fire there are three charts that were produced.

Q What [were] the results on those charts?

A That she failed the questions involving the Westberry Trails fire.

Q Was it a close call?

A No.

Q What do you mean by that?

A Some charts are more difficult to evaluate. They can be evaluated. Some take longer just to look at more closely. This one is very identifiable as a fail chart. She flunked those questions involving the Westberry Trails fire.

Based upon the foregoing testimony, Stevenson's failure of the polygraph and consequent breach of the plea agreement is clear. The examiner's access to investigative information concerning the Westberry Trails Fire is of no relevance whatsoever to the inquiry. Additionally, Stevenson did not offer any evidence to challenge the results of the polygraph or show that it was improperly conducted.

[¶ 13.] Stevenson next argues that the trial court was clearly erroneous in finding that she breached the plea agreement because there was no evidence corroborating the polygraph to establish that she was dishonest or untruthful in her debriefing. In support of her contention, she cites *U.S. v. Britt,* 917 F.2d 353 (8th Cir.1990). *Britt,* however, is distinguishable from the instant case. Although the defendant in *Britt* agreed to cooperate in an investigation into the use, possession and trafficking of controlled substances and to take a polygraph as part of that cooperation, passage of the polygraph was not made a specific part of the bargain. Rather, passage was only one circumstance among a totality of the circumstances that the government could consider in determining whether the defendant was being complete and truthful and whether to declare the plea agreement null and void. Thus, the polygraph was only secondary evidence of the defendant's compliance with the plea agreement in *Britt.* Here, Stevenson specifically agreed to *pass* the polygraph as part of her plea agreement. Therefore, the polygraph results in this case were direct evidence of her compliance or noncompliance with the agreement.

[¶ 14.] A second factor distinguishing this case from *Britt* is that one of the issues in *Britt* was whether polygraph results were admissible under the rules of evidence applicable to proceedings to vacate the defendant's guilty plea. Rather than reaching this issue, the Eighth Circuit relied on the corroborative evidence of the defendant's breach of the plea agreement to uphold the vacation of his plea. Important to the inquiry here, the court *never* held that the polygraph evidence was inadmissible in the absence of the corroborative evidence. Thus, Stevenson's current argument over the necessity of corroborative evidence under *Britt* is misplaced.

[¶ 15.] As her last argument, Stevenson asserts that the trial court was clearly erroneous in finding that she breached the plea agreement because it based its finding on polygraph results that are inadmissible as evidence in South Dakota. However, Stevenson ignores that this case arises out of a sentencing proceeding and that the rules of evidence are inapplicable in sentencing hearings.

SDCL 19–9–14(4). *See also State v. Huettl,* 379 N.W.2d 298, 304 (S.D.1985).

[¶ 16.] In support of her assertions, Stevenson cites a number of decisions in which this Court has rejected the admissibility of polygraph results as evidence. *See State v. Muetze,* 368 N.W.2d 575, 588 (S.D.1985); *State v. Watson,* 248 N.W.2d 398 (S.D.1976); *State v. O'Connor,* 86 S.D. 294, 301, 194 N.W.2d 246, 250 (1972). Stevenson also cites a series of out-of-state cases specifically holding polygraph results inadmissible in sentencing proceedings.

[¶ 17.] The cases cited by Stevenson are distinguishable in various respects from the current matter. In *State v. Anderson,* 293 Mont. 472, 977 P.2d 315 (Mont.1999), the polygraph was not administered pursuant to a specific part of the plea agreement. Rather, it was administered as part of a psychosexual evaluation that the defendant had agreed to. In addition, Montana had a broad rule prohibiting the admission of polygraph evidence "in any proceeding." *See Anderson,* 977 P.2d at 317. *Landrum v. State,* 977 S.W.2d 586 (Tex.Crim.App.1998), was not even a sentencing case. In *Landrum,* the Texas Court of Criminal Appeals denied discretionary review of a ruling prohibiting the defendant from presenting polygraph results to support his claim that he was under the influence of drugs when he gave a confession. The lower court had followed a rule holding polygraph evidence inadmissible per se. *Romero v. State,* 493 S.W.2d 206 (Tex.Crim.App.1973) also was not a sentencing case. In *Romero,* the defendant argued that the trial court erred in admitting polygraph results into evidence at trial pursuant to a pretrial stipulation. After a lengthy exploration of the issue of the admissibility of polygraph evidence, the Texas court held that, despite the stipulation, the trial court did err in admitting the evidence. Although *Commonwealth v. Puchalski,* 310 Pa.Super. 199, 456 A.2d 569 (Pa.Super.Ct.1983), was a sentencing case, the polygraph was not administered pursuant to a plea bargain, but at the behest of the sentencing court as part of an additional presentence investigation. The reviewing court held the trial court erred in admitting the polygraph results because of a rule holding such results inadmissible "for 'any purpose[.]'" *Puchalski,* 456 A.2d at 573.

[¶ 18.] For many years, South Dakota, like the above jurisdictions, followed a general rule prohibiting the admission of polygraph results into evidence for any purpose. *See State v. Waff,* 373 N.W.2d 18, 24–25 (S.D.1985); *Watson, supra; Muetze, supra; O'Connor, supra.* In *Satter v. Solem,* 458 N.W.2d 762 (S.D.1990), however, this Court held that the trial court erred in admitting the defendant's confession into evidence on the basis that it was coerced by the State's unfulfilled promise to administer a polygraph and its promise not to object to introduction of the results into evidence at trial. This Court further held that, on retrial, the State could cure the inadmissibility of the confession by fulfilling its promises with regard to the polygraph. In his special writing in *Satter,* Justice Henderson observed that the holding was an implicit recognition of the admissibility of polygraph results into evidence by agreement. *See Satter,* 458 N.W.2d at 771 (Henderson, J., concurring in part and dissenting in part). On the retrial of Satter, the trial court followed this observation and ruled that a defendant "should not be prevented from waiving the protection of the rule on inadmissibility of polygraph examinations." *See State v. Satter,* 1996 SD 9, ¶ 29, 543 N.W.2d 249, 255. On appeal after the retrial, this Court registered no criticism of that interpretation of its earlier ruling. *See id.*

[¶ 19.] The *Satter* cases yield a conclusion that polygraph results may be admitted in legal proceedings in this state according to the agreement or stipulation of the parties. *See also State v. Watson,* 248 N.W.2d 398, 399 (S.D.1976)(with only few exceptions, jurisdictions that have considered the matter have reaffirmed the rule that polygraph results are inadmissible *in the absence of a stipulation by the defendant and the prosecution* ). Such an agreement or stipulation was reached here as part of Stevenson's plea bargain where passage of a polygraph was made a significant part of the bargain and where proof of any breach would necessitate introduction of polygraph evidence. Accordingly, there was no clear error in the trial court's finding of a breach predicated on the introduction of the polygraph evidence.

[¶ 20.] Based upon the foregoing, the trial court was not clearly erroneous in its finding that Stevenson breached the plea agreement and in permitting the State to depart from the bargain to argue for an aggravated sentence.

[¶ 21.] Affirmed.

[¶ 22.] GILBERTSON, Chief Justice, and SABERS, AMUNDSON, KONENKAMP, and ZINTER, Justices, participating.