#29875-a-PJD
**2023 S.D. 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                        Plaintiff and Appellee,

    v.

RAYMOND CHARLES BANKS,                        Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBIN J. HOUWMAN
Judge

* * * *

KRISTI JONES
Sioux Falls, South Dakota

MANUEL J. DE CASTRO JR.
Sioux Falls, South Dakota                        Attorneys for defendant
                                        and appellant.

MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Solicitor General
Pierre, South Dakota                        Attorneys for plaintiff
                                        and appellee.

* * * *

ARGUED
MARCH 23, 2023
OPINION FILED **07/26/23**

#29875

DEVANEY, Justice

[¶1.] Raymond Banks pled guilty to first-degree manslaughter. Prior to his sentencing hearing, Banks sought to introduce evidence of a polygraph examination regarding his role in the crime. The circuit court precluded the admission of the polygraph evidence and sentenced Banks to eighty years in the penitentiary with twenty years suspended. Banks appeals, raising the single issue of whether the circuit court erred in excluding the polygraph evidence in its sentencing consideration. We affirm.

## Factual and Procedural History

[¶2.] Casey Bonhorst was killed by a single gunshot wound to his neck on the evening of February 26, 2020, after delivering a pizza to a home in Sioux Falls. The investigation of this incident led law enforcement to suspect Banks and Jahennessy Bryant as the perpetrators of the shooting. Bryant was arrested first, but on August 12, 2020, Banks and Bryant were charged as co-defendants in a five-count superseding indictment that included two counts of first-degree murder, one count of second-degree murder, one count of first-degree manslaughter, and one count of attempted first-degree robbery.

[¶3.] Throughout the entirety of the proceedings, Banks and Bryant have maintained differing accounts of the events that transpired leading to Bonhorst's death. Both agreed that while walking from Banks's girlfriend's apartment to the duplex where Banks's aunt resided, they noticed a Domino's delivery vehicle parked outside the duplex. According to Bryant, Banks suggested that they rob the delivery man, but Banks claimed it was Bryant's idea.

-1-

[¶4.]	As to the subsequent events, Bryant testified at a pretrial hearing that Banks approached Bonhorst, pulled a gun on him, and told him, "Don't move or anything, try anything stupid." Bryant explained that he started moving toward Banks to help him by holding Bonhorst from behind, but then he heard gunshots. After the shooting, both he and Banks took off running in different directions.

[¶5.]	The roles were essentially reversed in Banks's version of the events, with Bryant being the shooter and Banks serving as the lookout. Banks claimed that he stayed back behind the house as a lookout while Bryant walked up to Bonhorst and put the gun in his face. According to Banks, Bonhorst threw some change at Bryant and lunged at him. Bryant reacted by pulling the trigger, after which they both fled the scene.

[¶6.]	In November 2020, both defendants moved to sever their cases and the circuit court granted their motions. Bryant subsequently entered into a plea agreement with the State, pleading guilty to first-degree manslaughter in exchange for a cap on his sentence of twenty-five years in prison with twenty-five additional years suspended. As part of his plea agreement, Bryant was required to testify against Banks.

[¶7.]	Later, Banks also pled guilty to first-degree manslaughter. His agreement capped the prison time he would have to serve at sixty years with the possibility of more time suspended. At Banks's change of plea hearing, the State described the factual basis for the plea in accord with Bryant's version of the events, with Banks being the shooter. Banks contested this factual basis and alleged that while the underlying facts provided by the State were true, the roles were reversed.

Banks claimed Bryant was the shooter but acknowledged to the court that he knew a robbery was going to occur and that he stood by as a lookout. In response to further questions from the court about his actions, Banks admitted that he was aiding and abetting the situation. The court then accepted Banks's guilty plea.

[¶8.] Two days before his sentencing hearing, Banks notified the court and counsel that he was planning to offer the testimony of Mike Webb, a polygraph examiner, regarding the results of a polygraph examination Banks had recently taken at the jail, which supported his version of the shooting. The polygraph report states that in the examiner's opinion, Banks showed "no significant reaction indicating deception" when he answered "no" to questions regarding whether he had shot Bonhorst on the date in question.

[¶9.] Prior to the hearing, the State objected to the admission of any testimony regarding the polygraph examination. The State argued that polygraph evidence is not admissible at sentencing absent an agreement by the parties, citing *State v. Stevenson*, 2002 S.D. 120, 652 N.W.2d 735. The circuit court agreed with the State and noted that because of the questionable reliability of polygraph examination results, this Court has consistently held that such evidence is not admissible in any proceeding and has only affirmed the admission of such evidence where there was a stipulation or agreement between the parties. The court therefore ruled that the evidence of Banks's polygraph examination would not be admitted at his sentencing hearing.

[¶10.] Banks and Bryant were sentenced at a joint sentencing hearing at which the circuit court considered evidence of the crime committed relating to both

defendants, as well as information regarding each defendant's history and background. The State asked for sentences consistent with the respective agreed-upon caps in each defendant's plea agreement. Banks, however, maintained that he was not the shooter and urged the circuit court to impose the same sentence for both defendants.

[¶11.] The circuit court began its remarks by explaining what must be considered when imposing a sentence, including the gravity of the offense in comparison to the harshness of the penalty, the character and history of the defendant, the defendant's rehabilitation prospects, any expressed remorse, an appropriate punishment, and deterrence. The court then acknowledged that the facts were not clear about what had happened in this case. Because there was no trial, the court noted its reliance on other sources of information, such as police reports, prior testimony, forensic evidence reports, and the additional information contained in the presentence investigation reports.

[¶12.] In describing the offense itself, the circuit court acknowledged the divergent stories of the two defendants. The court related the evidence implicating both Banks and Bryant and also commented on the evidence in the record which did or did not support each defendant's version of the events. Importantly, the court noted that regardless of the two versions, both men had pled guilty to manslaughter in the first degree—a killing of another human being with a dangerous weapon. *See* SDCL 22-16-15(3). The court further noted that "one who aids and abets this crime is equally culpable under the law of the State of South Dakota" and that "legally it does not matter who pulled the trigger."

[¶13.]        In considering Banks's history, the court commented on his childhood during which he resided with his mother and moved frequently. The court noted Banks's early use of substances which included smoking marijuana every day since the age of fourteen and drinking alcohol several times a week. The court also noted that Banks had been suspended from school on a few occasions, but nevertheless obtained his GED.

[¶14.]        Regarding rehabilitation, the court observed that Banks was only eighteen years old at the time of the crime but then noted his extensive juvenile history, which included intensive probation and placements with the Department of Corrections. The court further observed that previous rehabilitation efforts had not been effective given that Banks continued to commit crimes very similar to the one for which he was being sentenced. His criminal history, as noted by the court, included drug-related charges, curfew violations, intentional damage to property, theft, second-degree robbery, riot, and assault, and some of these crimes were committed while Banks was on probation. The court also noted that following the shooting of Bonhorst, Banks was charged with simple assault for violent acts against two different women, and according to testimony from Bryant, he and Banks committed another robbery immediately after their attempted robbery and shooting of Bonhorst. Additionally, the court mentioned that Banks had been the subject of many informal disciplinary reports as well as two major violations for fighting while in jail, and at the time of sentencing, Banks had pending federal charges involving the theft of firearms.

[¶15.]     As for remorse, the court considered that Banks had pled guilty to the crime and expressed in court that he was remorseful, but just three days prior, Banks had joked while talking with his girlfriend by phone at the jail that instead of getting a tear drop tattoo in prison indicating that he had killed an individual, he should instead get a tattoo of a slice of pizza. The court concluded its remarks by noting the devastating impact this crime had on Bonhorst's family members and the fact that Bonhorst's shooting had impacted the entire community's ability to feel safe and secure.

[¶16.]     Ultimately, the court sentenced Banks, consistent with his plea agreement, to eighty years in prison, with twenty years suspended.[1] Banks appeals, raising the single issue of whether the circuit court erred by excluding his polygraph results from the sentencing hearing.

### Analysis

[¶17.]     In this appeal, Banks is not directly challenging his sentence per se. Instead, he challenges the circuit court's refusal to consider a particular type of evidence when determining his sentence. "[A] circuit court's ruling on the admissibility of evidence is reviewed under the abuse of discretion standard." *State v. Loeschke*, 2022 S.D. 56, ¶ 17, 980 N.W.2d 266, 272. "An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices." *State v. Mitchell*, 2021 S.D. 46, ¶ 27, 963 N.W.2d 326, 332 (quoting *State v. Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d 75, 83). "An abuse of discretion occurs when the

---

1.     The court sentenced Bryant, in accord with his plea agreement, to fifty years in prison with twenty-five years suspended.

circuit court exercises its discretion to an end or purpose not justified by, and clearly against reason and evidence." *State v. Reeves*, 2021 S.D. 64, ¶ 11, 967 N.W.2d 144, 147 (quoting *State v. Berget*, 2014 S.D. 61, ¶ 13, 853 N.W.2d 45, 52). "This Court . . . will not overturn the circuit court's abuse of discretion unless that 'error is demonstrated and shown to be prejudicial error.'" *Mitchell*, 2021 S.D. 46, ¶ 27, 963 N.W.2d at 332 (quoting *State v. Klinetobe*, 2021 S.D. 24, ¶ 26, 958 N.W.2d 734, 740).

[¶18.] As the evidentiary ruling at issue here pertains to a sentencing hearing, we note that "[c]ircuit courts have broad discretion in sentencing" and when making a sentencing decision, "[c]ourts should consider the traditional sentencing factors of retribution, deterrence—both individual and general—rehabilitation, and incapacitation." *Klinetobe*, 2021 S.D. 24, ¶ 28, 958 N.W.2d at 741. "[C]ircuit courts must look at both the person before them and the nature and impact of the offense." *Mitchell,* 2021 S.D. 46, ¶ 29, 963 N.W.2d at 333. Regarding the latter, "courts must consider sentencing evidence tending to mitigate or aggravate the severity of a defendant's conduct and its impact on others. Sentencing courts are often required, in this regard, to accurately assess the 'true nature of the offense.'" *Id.* ¶ 30, 963 N.W.2d at 333 (quoting *Klinetobe*, 2021 S.D. 24, ¶ 36, 958 N.W.2d at 742).

[¶19.] With regard to the information presented to a sentencing court, we have noted that "the range of evidence that may be considered at sentencing is extremely broad." *State v. Arabie*, 2003 S.D. 57, ¶ 21, 663 N.W.2d 250, 257. This broad range of information may include evidence that would be inadmissible at trial, as the rules of evidence do not apply at sentencing hearings. *Stevenson*, 2002

S.D. 120, ¶ 15, 652 N.W.2d at 740; *see also* SDCL 19-19-1101(4) (listing sentencing as one of the situations where the rules of evidence do not apply).

[¶20.]     Banks argues that because his polygraph results supported his claim that he was not the shooter, the circuit court abused its discretion in refusing to admit this mitigating evidence. At oral argument, counsel for Banks urged this Court to adopt a categorical rule that all evidence that is conceivably mitigating in nature must be admitted at sentencing. Banks's argument centers on this Court's statements in *Mitchell*, 2021 S.D. 46, ¶ 30, 963 N.W.2d at 333, directing that mitigating evidence must be considered at sentencing, and the fact that the rules of evidence do not apply at sentencing hearings. While it is true that circuit courts have wide latitude in determining what type of evidence may be considered at sentencing, Banks's reliance on *Mitchell* to support his suggestion that any and all possible mitigating evidence must be admitted without limitation is misplaced.

[¶21.]     In *Mitchell*, the evidence the sentencing court failed to consider involved the very essence of the crime to which the defendant had pled guilty. *Id.* ¶ 38, 963 N.W.2d at 335. In pleading guilty to first-degree manslaughter under SDCL 22-16-15(4), the defendant admitted that he had unnecessarily killed another person while resisting that person's attempt to commit a crime. *Id.* ¶ 33, 963 N.W.2d at 334. Thus, the crime for which Mitchell was being sentenced contemplates criminal conduct by the victim and the exercise of an "imperfect" self-defense by the defendant. *Id.* ¶ 36, 963 N.W.2d at 334–35. Because the circuit court failed to take the victim's criminal conduct into account when evaluating the

defendant's culpability and determining his sentence, we vacated the sentence and remanded for a new sentencing hearing. *Id.* ¶ 40, 963 N.W.2d at 335–36.

[¶22.] Here, unlike in *Mitchell*, the circuit court did not fail to consider evidence relating to an essential element of the first-degree manslaughter offense to which Banks had pled guilty. Although Banks maintains that a determination of which defendant was the shooter was critical to the court's sentencing determination, here, the circuit court noted that under the circumstances surrounding Bonhorst's shooting, "legally it does not matter who pulled the trigger." *See* SDCL 22-3-3 ("Any person who, with the intent to promote or facilitate the commission of a crime, aids, abets, or advises another person in planning or committing the crime, is legally accountable, as a principal to the crime."). While the role each defendant played may, in some cases, have a mitigating or aggravating effect on the court's sentencing determination, the court has broad discretion to determine what constitutes a mitigating or aggravating circumstance given the unique facts of each case.[2]

[¶23.] As for the other premise on which Banks relies to support his claim that the polygraph evidence should have been admitted, the fact that the rules of evidence do not apply at a sentencing hearing does not mean that any and all

---

2. Notably, in cases involving a shooting and charges against multiple defendants, a court may find the individual who actually fired the gun to be less culpable than a co-defendant who instigated the offense or provided the weapon. *See, e.g.*, *Rice*, 2016 S.D. 18, ¶¶ 24–25, 877 N.W.2d at 83–84 (rejecting a defendant's claim that because he was not directly involved with the shooting, the sentence he received for first-degree manslaughter was disproportionate to the sentences his co-defendants received for the same offense).

evidence proffered by the parties must be considered. Though much less restrictive than the limitations posed by the rules of evidence, this Court has still placed guard rails on what can be introduced at a sentencing hearing.

[¶24.] In *State v. Berget*, in the context of the sentence selection phase of a capital murder case, the Court acknowledged that while the rules of evidence do not apply to sentencing, "[t]his does not mean, however, that the sentence-selection determination is a free-for-all at which any information can be presented to the sentencing authority, regardless of its reliability." 2013 S.D. 1, ¶ 65, 826 N.W.2d at 21. In considering the admissibility of hearsay evidence, *Berget* held that "due process requires that some minimal indicia of reliability accompany a hearsay statement." *Id.* ¶ 65, 826 N.W.2d at 22. This rule requiring a base level of reliability before hearsay evidence can be considered at sentencing is generally applicable to other types of evidence as well.[3]

[¶25.] Given the reliability concerns surrounding polygraph evidence, this Court has established a per se rule prohibiting the admission of polygraph evidence in criminal and civil cases. *State v. Bertram*, 2018 S.D. 4, ¶ 14, 906 N.W.2d 418, 423–24. We have explained the basis for this per se rule, citing three rules of evidence, as follows:

---

3. The Eighth Circuit Court of Appeals has similarly required a base level of reliability for evidence introduced at sentencing. In rejecting the use of polygraph evidence at a sentencing hearing in *Ortega v. United States*, the Eighth Circuit stated that "although at sentencing a district court may consider information that would be inadmissible at trial, the information must have 'sufficient indicia of reliability to support its probable accuracy.'" 270 F.3d 540, 548 (8th Cir. 2001) (quoting U.S.S.G. § 6A1.3(a)).

> The rationale advanced for not admitting evidence of polygraph
> results, in civil or criminal cases, is that such evidence is
> irrelevant because of dubious scientific value [(Rule 402)], it has
> no "general scientific acceptance as a reliable and accurate
> means of ascertaining truth or deception," it is not reliable
> [(Rule 702)], it has no probative value, and it is likely to be given
> significant, if not conclusive weight by the jury, so that "the
> jurors' traditional responsibility to collectively ascertain the
> facts and adjudge guilt or innocence is thereby preempted"
> [(Rule 403)].

*Id.* (alterations in original) (quoting *Sabag v. Cont'l S.D.*, 374 N.W.2d 349, 353 (S.D. 1985)). Banks notes, however, that *Bertram* and the cases cited therein pertain to polygraph evidence offered *at trial* and the inherent concerns regarding how such evidence would be considered by a jury.[4] He asserts that because the rules of evidence do not apply at sentencing hearings, the concerns identified in *Bertram* should not preclude a sentencing court from considering polygraph evidence.

[¶26.]     This Court has, thus far, only analyzed the use of polygraph evidence at sentencing hearings in a scenario where such evidence was offered for a particular purpose relating to a condition in a plea agreement. In *State v. Stevenson*, the defendant was required under the terms of her plea agreement to take a polygraph examination regarding her role in forest fires, the failure of which would result in a revocation of the agreement. 2002 S.D. 120, ¶ 2, 652 N.W.2d at 737. At the sentencing hearing, the State offered testimony from a polygraph

---

4.     The discussion in *Bertram* regarding the per se rule prohibiting the admission of polygraph evidence also noted other decisions by this Court affirming the exclusion of such evidence. *See State v. Waff*, 373 N.W.2d 18 (S.D. 1985) (holding that the trial court did not err in refusing to admit polygraph evidence offered by the defendant as impeachment evidence and to implicate a third-party perpetrator); *State v. Muetze*, 368 N.W.2d 575, 588 (S.D. 1985) (affirming the exclusion of polygraph evidence to impeach a State's witness).

examiner to establish that the defendant had failed a polygraph examination regarding her involvement in a previous fire. *Id.* ¶ 5, 652 N.W.2d at 738. This evidence was offered in conjunction with the State's request for leave of the court to depart from its agreed-upon sentencing recommendation and argue for a more severe sentence. *Id.* The circuit court admitted the evidence for this limited purpose and determined that the defendant had breached the plea agreement by failing the polygraph examination. The court then granted the State's request for leave to argue for a sentence outside the bounds of the plea agreement. *Id.*

[¶27.]     On appeal, the defendant asserted that the circuit court erred in finding a breach of the plea agreement and allowing the State to seek a greater sentence, arguing, in part, that the court's ruling was contrary to this Court's cases rejecting the admission of polygraph evidence. *Id.* ¶ 16, 652 N.W.2d at 741. After analyzing the prior cases that have addressed such evidence, the Court determined that the circuit court did not err in allowing the admission of the polygraph evidence given the circumstances presented, i.e., "where passage of a polygraph was made a significant part of the [parties'] bargain and where proof of any breach would necessitate introduction of polygraph evidence."[5] *Id.* ¶ 19, 652 N.W.2d at 742.

---

5.     In affirming the admission of the polygraph evidence in *Stevenson,* the Court referred to a special writing in *Satter v. Solem*, 458 N.W.2d 762, 771 (S.D. 1990) (Henderson, Justice, concurring in part and dissenting in part), and the related opinion this Court issued in *State v. Satter*, 1996 S.D. 9, 543 N.W.2d 249 after the case was remanded and once again appealed. 2002 S.D. 120, ¶ 18, 652 N.W.2d at 741. The Court observed that the *Satter* cases "yield a conclusion that polygraph results may be admitted in legal proceedings . . . according to the agreement or stipulation of the parties." *Id.* ¶ 19, 652

(continued . . .)

[¶28.] Here, unlike the *Stevenson* case, there was no agreement or stipulation between the parties as to the use of polygraph evidence. But even if there had been such an agreement, Banks seeks to use the results of a polygraph examination, not to establish whether he passed or failed, but as substantive proof of an underlying fact in dispute. The Court's affirmation of the admission of the results of a polygraph examination in *Stevenson* for the distinct purpose of showing noncompliance with a plea agreement does not resolve the reliability concerns associated with the accuracy of polygraph examinations in determining the truth or falsity of a disputed fact. Such concerns are present regardless of whether the polygraph results are being offered at a trial or at a sentencing hearing.

[¶29.] As the United States Supreme Court stated in rejecting a claim that a rule precluding the admissibility of polygraph evidence is contrary to a defendant's constitutional right to present a defense, "there is simply no consensus that polygraph evidence is reliable." *United States v. Scheffer*, 523 U.S. 303, 309, 118 S. Ct. 1261, 1265, 140 L. Ed. 2d 413 (1998). The Court in *Scheffer* also observed that "there is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate, because certain doubts and uncertainties plague even the best polygraph exams." *Id.*, 523 U.S. at 312, 118 S. Ct. at 1266.

---

(. . . continued)

    N.W.2d at 742. Notably, however, the statements quoted from these *Satter* cases are, at best, dicta, given that the admissibility of polygraph evidence was not the issue in either case. Nevertheless, the Court's ruling in *Stevenson* supports the general principle that the circuit court has the *discretion* to admit polygraph evidence under certain circumstances. But this does not mean, as Banks suggests, that a sentencing court is *required* to admit such evidence simply because the rules of evidence do not apply at sentencing.

[¶30.] Further, in contrast to the scenario in *Stevenson*, the polygraph here was commissioned by Banks alone and the State did not find out about it until after it had been administered. As we noted in *Bertram*, a "privately commissioned polygraph test, which [is] unknown to the government until after its completion, is of *extremely* dubious probative value[.]" 2018 S.D. 4, ¶ 18, 906 N.W.2d at 425 (alterations in original) (quoting *United States v. Montgomery*, 635 F.3d 1074, 1094 (8th Cir. 2011)).

[¶31.] Nevertheless, despite the shortcomings with polygraph evidence, this Court has acknowledged the possibility of the admissibility of such evidence in the future, stating:

> We do not foreclose the possibility of reconsidering this per se rule in the future if presented with an appropriate case. However, abandoning the per se rule against admitting polygraph-test results would require, at a minimum, strong evidence that the technology of polygraphs has advanced to such a degree that they are generally accepted as reliable in the scientific community.

*Bertram*, 2018 S.D. 4, ¶ 15 n.6, 906 N.W.2d at 424 n.6. When making his proffer to the circuit court, Banks did not provide evidence as to any scientific advancement in polygraph administration or a shift in the consensus among the scientific community indicating greater confidence in the reliability of the examination results to support the admission of his polygraph results.[6]

---

6. Banks relies heavily on this Court's decision in *State v. Huettl* to support his claim that evidence otherwise inadmissible *at trial* because of reliability concerns may nevertheless be considered *at sentencing* despite such concerns. In *Huettl*, the circuit court relied on the results of a preliminary breath test (PBT) as a factor in determining its sentence even though the PBT results had been excluded from trial. 379 N.W.2d 298, 304 (S.D. 1985). Notably,

(continued . . .)

[¶32.] The circuit court, in refusing to admit Banks's polygraph evidence because of reliability concerns, cited extensive research showing that most state and federal appellate courts considering the admissibility of polygraph evidence at sentencing have upheld refusals to admit this evidence. *See, e.g.*, *Ortega*, 270 F.3d at 548 (citing numerous cases from other appellate courts). While Banks attempts to distinguish a few of the cases the circuit court cited, he has not refuted the central point that the weight of the authority is contrary to his position. Moreover, given this Court's clearly expressed concerns regarding the reliability of polygraph evidence, Banks has failed to show how the circuit court's ruling would be "clearly against reason and evidence," *Reeves*, 2021 S.D. 64, ¶ 11, 967 N.W.2d at 147 (quoting *Berget*, 2014 S.D. 61, ¶ 13, 853 N.W.2d at 52), or "outside the range of permissible choices." *Mitchell*, 2021 S.D. 46, ¶ 27, 963 N.W.2d at 332 (quoting *Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d at 83). We therefore conclude that the circuit court did not abuse its discretion in excluding the proffered polygraph evidence.

[¶33.] Affirmed.

[¶34.] JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.

---

(. . . continued)

however, the defendant's primary argument on appeal did not relate to the unreliability of PBT results. Instead, the defendant asserted a lack of foundation for the admission of this evidence at sentencing because the witness through whom the evidence was offered was not the person who administered the PBT. *Id.* It was in this context (an asserted lack of foundation) that this Court referred to the rules of evidence not applying at sentencing hearings and determined that the sentencing court did not err in admitting the PBT results. *Id.* These statements in *Huettl* do not support Banks's broad assertion that circuit courts lack the discretion to refuse to admit evidence with questionable reliability at sentencing hearings.