#29510-a-MES
**2022 S.D. 21**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

CRUZ DELEON,                              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFF W. DAVIS
Retired Judge

* * * *

ILISJA DUFFY of
Duffy Law Firm, Prof. LLC
Rapid City, South Dakota                  Attorneys for defendant and
                                          appellant.


JASON R. RAVNSBORG
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                          appellee.

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 14, 2022
OPINION FILED **04/06/22**

#29510

SALTER, Justice

[¶1.] Cruz Deleon appeals his sentence after pleading guilty to attempted first-degree murder and commission of a felony with a firearm. Deleon argues that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. Though not expressly stated, it appears that Deleon also challenges the exercise of the circuit court's sentencing discretion. After reviewing both theories, we affirm.

**Facts and Procedural History**

[¶2.] On July 31, 2017, Pennington County Sheriff's Deputy Jakob Whittle responded to a call seeking assistance with the execution of an arrest warrant for Cassandra Quiver at a Box Elder residence. Deputy Whittle arrived at the address before his Box Elder police officer counterpart and anticipated waiting in his patrol car until the other officer arrived. However, he observed a female matching Quiver's description[1] walking around the home toward what he believed to be a parked vehicle, and he started out after her on foot in an effort to prevent her from leaving.

[¶3.] Parked in the driveway of the home associated with Quiver, Deputy Whittle noticed a minivan with a man, later identified as Cruz Deleon, in the driver's seat. The passenger's seat was occupied by a child. Deputy Whittle approached the vehicle and asked Deleon if the residence was "701." Before Deleon could answer, Deputy Whittle saw the numbers listed on the residence, confirming he was at the right address. He then asked Deleon if Quiver was home. Deleon

---

1.    Deputy Whittle recognized Quiver from her mugshot.

-1-

responded that he did not know. Deputy Whittle observed that Deleon appeared nervous throughout the interaction and asked him for some identification. Deleon was unable to produce any identification and, after hesitating, told Deputy Whittle that his name was "Brad Husman."

[¶4.] Suspecting Deleon had provided a false name, Deputy Whittle asked him to step out of the van.[2] After several requests, Deleon opened the door and began to step out with his left foot. Deputy Whittle stepped back to give him some space. However, Deleon abruptly reversed course. He retreated back into the van, closed the door, and started the engine. Deputy Whittle attempted to open the door and pull Deleon out of the van, but Deleon swatted Deputy Whittle's hands away. Deleon then reached below his seat and retrieved a .38-caliber revolver and fired at Deputy Whittle who quickly drew his own gun and returned fire.

[¶5.] In all, four shots were fired. Two shots fired by Deleon missed Deputy Whittle, and one of the two rounds fired by the deputy struck Deleon in the right forearm. Fortunately, others in the area, including children, were unharmed.[3] Deputy Whittle attended to the wounded Deleon until the arrival of emergency medical personnel who transported Deleon to Rapid City Regional Hospital, where doctors surgically repaired a broken bone in his arm by inserting a metal rod. When Deputy Whittle secured Deleon's revolver, he found it contained three live rounds in addition to the two spent cartridges.

---

2.    At or around the same time, Deleon told the child who had been sitting in the front passenger seat to get his mother, and the child got out of the van.

3.    Deputy Whittle testified during a suppression hearing that there were three to five children on the porch of the home.

#29510

[¶6.]        On September 6, 2017, a grand jury indicted Deleon on the following

six counts: attempted first-degree murder, two counts of aggravated assault on a

law enforcement officer, commission of a felony with a firearm, possession of a

controlled substance, and false impersonation.  Deleon pled not guilty, and bond

was set at $1,000,000.  He remained in custody during the pendency of the case,

which lasted over three years.[4]

[¶7.]        On November 3, 2020, Deleon and the State entered into a plea

agreement under which Deleon agreed to plead guilty to attempted first-degree

murder and commission of a felony with a firearm.[5]  Each charge is punishable by

up to twenty-five years in prison.  The parties' plea agreement did not include a

recommended sentence or sentencing range and did not limit the exercise of the

circuit court's discretion.  The charge of commission of a felony with a firearm

carried a five-year mandatory minimum prison term along with a requirement that

any sentence "imposed . . . shall be consecutive to any other sentences imposed for a

violation of the principal felony."  SDCL 22-14-12.[6]  The circuit court noted the

---

4.     During the lengthy pendency of the case, Deleon litigated a suppression
       issue, underwent competency and forensic psychiatric evaluations, and
       changed counsel three times.

5.     The State agreed to dismiss the other charges alleged in the indictment.

6.     The text of SDCL 22-14-12 provides in relevant part:

           Any person who commits or attempts to commit any felony while
           armed with a firearm . . . is guilty of a Class 2 felony for the first
           conviction.  A second or subsequent conviction is a Class 1
           felony.  The sentence imposed for a first conviction under this
           section shall carry a minimum sentence of imprisonment in the
           state penitentiary of five years . . . .

                                                    (continued . . .)

-3-

parties' written factual basis statement, accepted the plea, and ordered a pre-sentence investigation report (PSI).

[¶8.] On December 1, 2020, the circuit court conducted a sentencing hearing at which both Deputy Whittle and his wife provided victim impact statements. Deputy Whittle stated that he has had night terrors since the day of the incident, dreaming that he is shot or that he unintentionally shoots an innocent child. He discussed the toll the incident has taken on both his mental health as well as his wife's. He stated the job he once loved has become less enjoyable.[7] Deputy Whittle's wife also discussed the anxiety she now experiences when her husband does not answer her calls or text messages. She becomes easily paranoid and often fears the worst. Both Deputy Whittle and his wife asked the court to impose the maximum sentence in order to prevent Deleon from harming anyone else.

[¶9.] During its sentencing argument, the State called the court's attention to portions of the PSI that it believed strongly suggested Deleon had not fully accepted responsibility for his criminal conduct. For instance, when the PSI author asked Deleon how he believed the victim felt, Deleon responded that *he* was the real victim because of lingering discomfort in his arm as a result of the gunshot wound.

_____

(. . . continued)

> Any sentence imposed under this section shall be consecutive to any other sentences imposed for a violation of the principal felony.

7. At some point after the incident with Deleon, Deputy Whittle's role with the Pennington County Sheriff's Office changed, and he was designated as an agent.

Deleon eventually conceded that he would be upset if someone had pointed a gun at him.

[¶10.] The PSI also detailed Deleon's extensive record of institutional misconduct while he was confined in the Pennington County Jail. Deleon's sixty-two separate disciplinary incidents led to additional criminal charges and included "threatening staff and other inmates; damaging jail property; spitting on inmates; . . . disruptive behaviors and fail[ure] to follow staff directives; [and] disrespectful comments to staff and inmates[.]"

[¶11.] Deleon had not previously been convicted of a felony, but he had a pending felony case at the time of the incident with Deputy Whittle and had a history of contact with law enforcement. The PSI also indicated that Deleon had a poor employment record and a long history of controlled substance abuse, dating back to his childhood. On the day of the incident with Deputy Whittle, Deleon claimed he was high on methamphetamine and bath salts and had been for nearly two weeks.

[¶12.] The State asked the circuit court to impose the maximum penalty of twenty-five years on the charge of attempted first-degree murder and a sentence of ten years or more on the charge of commission of a felony with a firearm. In the State's view, Deleon's unprovoked attack on Deputy Whittle was further aggravated by the fact that it potentially put the safety of nearby children at risk.

[¶13.] Deleon argued for a sentence that was less than the statutory maximum. Deleon's attorney argued the jail write-ups were due to the difficult conditions Deleon faced while confined. Counsel contended Deputy Whittle caught

Deleon off guard at a time when he was "spun out" on drugs. Deleon did not intend to kill Deputy Whittle, defense counsel claimed, and had made a terrible decision because his unrestrained drug use had compromised his physical and mental health. Deleon was a father of two children with strong family support, his attorney argued, and had accepted responsibility by pleading guilty. For his part, Deleon declined the opportunity to address the court or Deputy Whittle and his wife.

[¶14.] In explaining its sentence, the circuit court indicated its familiarity with the record and rejected Deleon's effort to minimize the extent of his institutional misconduct related in the PSI. The circuit court specifically commented on Deleon's lack of work history and unflattering lifestyle, which it characterized as, "Sell drugs. Hang out. Let your family support you." The court stated that Deleon had let his family, himself, and the community down by his actions.

[¶15.] The court also acknowledged Deleon's substance abuse problem, which the court believed made Deleon a danger to himself and to society. The court added that the PSI was "loaded with aggravating factors" and sentenced Deleon to twenty-five years in prison on the charge of attempted first-degree murder and an additional consecutive twenty-five years on the count of commission of a felony with a firearm.

[¶16.] Deleon appeals, asserting what he describes as an Eighth Amendment challenge to his sentence. However, his argument also includes many individualized sentencing concepts that are more consistent with a claim that the circuit court abused its discretion when it imposed his sentence. *See State v. Rice*,

2016 S.D. 18, ¶¶ 12, 16, 877 N.W.2d 75, 79–81 (noting prior confusion between Eighth Amendment claims and abuse of discretion challenges).  We will, therefore, consider the following two issues:

1. Whether the circuit court abused its discretion by imposing two twenty five-year sentences to be served consecutively for attempted first-degree murder and commission of a felony with a firearm.

2. Whether the circuit court's two twenty-five-year sentences to be served consecutively violate the Eighth Amendment's prohibition against cruel and unusual punishment.

**Analysis and Decision**

*Abuse of Discretion*

[¶17.] A sentencing court abuses its discretion when the sentence imposed is "a choice outside the range of permissible choices." *State v. Mitchell*, 2021 S.D. 46, ¶ 27, 963 N.W.2d 326, 332 (quoting *Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d at 83). "Sentencing courts possess broad discretion within constitutional and statutory limits to determine the extent and kind of punishment to be imposed." *Id.* ¶ 28, 963 N.W.2d at 333 (quoting *Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d at 83) (cleaned up). "Courts should consider the traditional sentencing factors of retribution, deterrence—both individual and general—rehabilitation, and incapacitation, without regarding any single factors as preeminent over the others." *Id.* (cleaned up) (citation omitted).  These factors are "weighed 'on a case-by-case basis' depending on the circumstances of the particular case." *Id.* (quoting *State v. Klinetobe*, 2021 S.D. 24, ¶ 28, 958 N.W.2d 734, 741).

[¶18.] Further, a sentencing court should consider both the defendant appearing before it as well as "the nature and impact of the offense." *Id.* ¶ 29, 963 N.W.2d at 333. We have held, in this regard, that "the sentencing court should acquire a thorough acquaintance with the character and history" of the defendant by studying the "defendant's general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record." *Id.* (citations omitted). Additionally, a sentencing court must consider "evidence tending to mitigate or aggravate the severity of a defendant's conduct and its impact on others." *Id.* ¶ 30, 963 N.W.2d at 333.

[¶19.] As indicated, the circuit court's sentencing discretion relating to the commission of a felony with a firearm offense was limited in certain ways by statute. In addition to requiring a mandatory minimum prison sentence of at least five years, the provisions of SDCL 22-14-12 also remove the court's discretion to order concurrent sentences for multiple offenses. Instead, the statute requires that the court impose the sentence to run consecutively to the sentence on the principal felony. *Id.*; *cf.* SDCL 22-6-6.1 (stating the sentencing court ordinarily has discretion to order consecutive or concurrent sentences for multiple offenses).

[¶20.] The record here indicates the circuit court acted within its discretion. The court specifically considered Deleon's young age, family support, and prolonged controlled substance abuse problem. The court also noted Deleon's misconduct while in jail and the lack of positive or productive contributions over the course of his life. Deleon argued that but for the fact that he was high on drugs at the time of

the crimes, he would not have committed them.  However, the court found this argument to be unavailing and determined Deleon was a danger to himself and others.

[¶21.]     Of course, the circuit court understood that Deleon had pled guilty, which obviated the need for a trial.  But the PSI related insufficient information to support a mitigation argument based upon acceptance of responsibility.  Deleon viewed himself as a victim of violence, and he made no effort to express remorse to the court or the Whittles at the sentencing hearing.

[¶22.]     The sentencing court also considered the "nature and impact of the offense." *Mitchell*, 2021 S.D. 46, ¶ 29, 963 N.W.2d at 333.  Not only did Deleon engage in deadly behavior, but his aggression was directed at a law enforcement officer in the exercise of his duties.  This conduct had a profound impact upon Deputy Whittle and his wife.  Additionally, Deleon committed these crimes while in the presence of young children whose proximity presented an acute risk to their safety and well-being.  In fact, Deputy Whittle stated that he took care to position himself to ensure the children were not in his line of fire.

[¶23.]     Deleon notes that the attempted first-degree murder offense does not distinguish between law enforcement and civilian victims, and for this reason, Deputy Whittle's status should have had little or no effect on Deleon's sentence.  We are unpersuaded.  The fact that Deputy Whittle was acting in the line of duty is an aspect of the "nature and impact of the offense," and the court properly considered it among other evidence contained in the sentencing record.  *Id.*

[¶24.]    Deleon also claims the sentencing court did not specifically address the aggravating factors used in fashioning Deleon's sentence and failed to discuss Deleon's chances for rehabilitation, given his young age.[8]  But this evidence was presented to the court, and we believe the court considered it when the court formulated its sentence.  *See State v. Bult*, 1996 S.D. 20, ¶ 12, 544 N.W.2d 214, 217 ("We have never required a sentencing court to file detailed findings of fact to justify a sentence . . . .").  The court referenced the PSI and also indicated its familiarity with Deleon's case acquired over the course of its long pendency.

[¶25.]    Also unsustainable is Deleon's assertion that the circuit court erred by imposing a sentence that exceeded the State's recommendation.  The sentencing court was not bound by the parties' plea agreement and was free to exercise its discretion within the limits of its statutory authority.  Therefore, while the court imposed the statutory maximum sentence, the decision was within the range of permissible choices.

***Eighth Amendment***

[¶26.]    Whether a circuit court's sentence violates the Eighth Amendment is a question of constitutional law reviewed *de novo*.  *Klinetobe*, 2021 S.D. 24, ¶ 27, 958 N.W.2d at 741.  The Eighth Amendment prohibits the imposition of "cruel and unusual punishments."  *Id.* ¶ 42, 958 N.W.2d at 744 (citations omitted).  When reviewing a punishment for an Eighth Amendment violation, we first determine if the sentence is grossly disproportionate to the crime "by comparing the 'gravity of the offense against the harshness of the penalty.'"  *State v. Quevedo*, 2020 S.D. 42, ¶

---

8.    Deleon was twenty-one years old at the time of the shooting.

37, 947 N.W.2d 402, 410 (quoting *State v. Diaz*, 2016 S.D. 78, ¶ 51, 887 N.W.2d 751, 766). Rarely does this lead "to an inference of gross disproportionality and typically marks the end of our review." *Klinetobe*, 2021 S.D. 24, ¶ 42, 958 N.W.2d at 744. However, if we conclude the harshness of the penalty is grossly disproportionate to the gravity of the offense, we will compare the defendant's sentence to others imposed on other criminals for the same offense. *Id.*

[¶27.]     In reviewing the gravity of attempted first-degree murder, we have held:

> [The] analysis must focus on the seriousness of the attempt. However, because the punishment assigned to an attempt relies on the nature of the target offense . . . it stands to reason that the seriousness of an attempted criminal act also relies, in part, on the gravity of the target offense. It is axiomatic that the unlawful, premeditated killing of one person by another . . . is one of the most egregious acts contemplated by our criminal justice system.

*State v. Garreau*, 2015 S.D. 36, ¶ 11, 864 N.W.2d 771, 775.

[¶28.]     Although fortunately, no one died as a result of Deleon's actions, he attempted to take the life of another, and he did so with a firearm. Had his bullets hit their intended target and mortally wounded Deputy Whittle, Deleon would have been charged with murder. Thus, the gravity of attempted first-degree murder and commission of a felony with a firearm are high on the spectrum of all criminality.

[¶29.]     Additionally, the circumstances of both crimes increase the gravity of the offenses. *See State v. Chipps*, 2016 S.D. 8, ¶ 36, 874 N.W.2d 475, 488 (holding "the circumstances of the crime of conviction affect the gravity of the offense"). Here, Deleon used a firearm in an attempt to kill a law enforcement officer in the execution of his duties, with multiple children in close proximity. Deleon's actions

presented a significant risk of loss of life to Deputy Whittle, the children, and even himself. Therefore, the circumstances surrounding the offenses increase their gravity.

[¶30.]    As it relates to the harshness of the penalty, the circuit court sentenced Deleon to two twenty-five-year sentences, to be served consecutively. Attempted first-degree murder and commission of a felony with a firearm are both Class 2 felonies and carry maximum prison sentences of twenty-five years. *See* SDCL 22-16-4; SDCL 22-14-12; SDCL 22-4-1; SDCL 22-6-1. The spectrum of all permissible punishments authorized under South Dakota law extends well beyond Deleon's two twenty-five-year sentences and includes the sentences of life imprisonment without the possibility of parole and even death. Deleon's sentence amounts to a lengthy term of years but falls short of the most serious sentences permitted.

[¶31.]    Deleon argues his total fifty-year sentence is grossly disproportionate to the gravity of his offenses, citing mitigating evidence such as his age, guilty plea, and lack of felony convictions. He also cites to his controlled substance addiction, claiming his judgment was impaired at the time of the crimes as a result. However, these individualized sentencing arguments do not correspond to our established Eighth Amendment analysis for two discernible reasons.

[¶32.]    First, when reviewing a sentence for an Eighth Amendment violation, this Court has held that "a defendant's criminal history is only relevant when the sentence is enhanced under recidivism statutes." *Rice*, 2016 S.D. 18, ¶ 18, 877

N.W.2d at 81. Therefore, the gravity of the offense is not reduced by a defendant's lack of prior felony convictions. *Id.*

[¶33.] Second, we have held that an Eighth Amendment analysis "does not take an individualized approach to sentencing." *State v. Bausch*, 2017 S.D. 1, ¶ 38, 889 N.W.2d 404, 415. Our review of a sentence's constitutionality will not analyze characteristics or facts particular to the defendant, but, rather, looks "only to whether the penalty imposed is grossly disproportionate to the gravity of the offense." *Id.*

[¶34.] Given our determination that Deleon has failed to demonstrate that his sentence reflects gross disproportionality, our Eighth Amendment inquiry is at an end. *See State v. Yeager*, 2019 S.D. 12, ¶ 10, 925 N.W.2d 105, 110 ("If the threshold requirement of gross disproportionality is not met, the analysis under the Eighth Amendment ends."). There is no need to compare Deleon's sentence to the sentences of other criminals convicted of the same crimes.

## Conclusion

[¶35.] Deleon acted in an unprovoked effort to kill Deputy Whittle. Had the deputy not been able to successfully defend himself and quickly end the attack, Deleon may well have used the three remaining rounds in his revolver to a lethal end. The circuit court's sentencing decision was within its discretion and did not transgress the Eighth Amendment's prohibition against cruel and unusual punishment. We affirm.

[¶36.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.