#30654-a-SRJ
**2025 S.D. 15**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

   v.

CHAD DALE MARTIN,                               Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE SANDRA H. HANSON
Judge

\* \* \* \*

CHRISTOPHER MILES of
Minnehaha County Public
   Defender's Office
Sioux Falls, South Dakota                       Attorneys for defendant and
                                                appellant.


MARTY J. JACKLEY
Attorney General

JENNIFER M. JORGENSON
Assistant Attorney General
Pierre, South Dakota                            Attorneys for plaintiff and
                                                appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
JANUARY 13, 2025
OPINION FILED **03/12/25**

JENSEN, Chief Justice

[¶1.] Chad Martin was indicted on multiple felony and misdemeanor charges following a high-speed chase during which he struck another vehicle, injuring one of its occupants. Martin pleaded guilty to one count of vehicular battery and one count of aggravated eluding. He also admitted to a part II habitual offender information. The circuit court sentenced Martin to twenty years in the state penitentiary with eight years suspended on the vehicular battery conviction and imposed a suspended two-year sentence on the aggravated eluding conviction. Martin appeals, claiming the circuit court abused its discretion by considering uncharged conduct at sentencing. We affirm.

**Factual and Procedural Background**

[¶2.] On August 25, 2023, at approximately 10:30 p.m., Sioux Falls police officers on patrol near 14th Street and South Phillips Avenue observed a blue Saturn Outlook matching the description in a "be on the lookout" (BOLO) bulletin issued by law enforcement. The BOLO stated the vehicle had been stolen from its registered owner earlier in the afternoon while the owner was standing nearby. The vehicle's owner approached the vehicle and attempted to remove the suspect by reaching into the vehicle to strike him. With the owner still partially inside the vehicle, the suspect then attempted to flee in the vehicle and struck a woman on foot near the scene.

[¶3.] When officers observed the vehicle later that evening, they ran the vehicle's plates, which confirmed it as stolen. They followed the vehicle as it turned southbound onto South Cliff Avenue. The officers activated their emergency lights

to initiate a traffic stop, but the vehicle accelerated and turned westbound onto East 16th Street in an apparent attempt to evade law enforcement. Given the circumstances of the vehicle's theft, the officers notified Metro Communications that they were initiating a pursuit.

[¶4.] A high-speed chase ensued through residential areas, during which the suspect vehicle ran multiple stop signs and traffic lights. The vehicle eventually returned to Cliff Avenue, reaching speeds of approximately 75 miles per hour. At the intersection of East 12th Street and Cliff Avenue, the vehicle nearly crashed, clipping another vehicle, but regained control. At the intersection of 10th Street and Cliff Avenue, the vehicle ran a red light and collided with another vehicle lawfully proceeding through a green light, disabling both vehicles. S.A.R., an occupant of the vehicle struck during the collision, sustained injuries and was transported to a local hospital, where she was diagnosed with a broken collarbone.

[¶5.] The driver exited the stolen vehicle and fled on foot. After a brief pursuit, officers apprehended and identified him as Chad Martin. Officers observed Martin's bloodshot, glossy eyes, suggesting impairment. Standard field sobriety tests were not performed due to the nature of the incident and Martin's flight risk.

[¶6.] A Minnehaha County grand jury returned an indictment charging Martin with several felony and misdemeanor offenses including vehicular battery in violation of SDCL 22-18-36, a Class 4 felony, and aggravated eluding in violation of SDCL 32-33-18.2, a Class 6 felony. All the charges were based on the events surrounding the high-speed pursuit with law enforcement that resulted in the

collision with S.A.R.'s vehicle.  The State did not charge Martin for the events involving the theft of the vehicle earlier that same day.

[¶7.]    The State also filed a part II information pursuant to SDCL 22-7-8 alleging Martin had been convicted in South Dakota of three or more prior felony offenses, including one or more crimes of violence.[1]  Martin was arraigned on September 11, 2023, and entered a not guilty plea to all of the charges.

[¶8.]    On October 30, 2023, the parties appeared and presented a plea agreement on the record.  Under the agreement, Martin would plead guilty to vehicular battery and aggravated eluding and admit to the part II information.  In exchange, the State dismissed the remaining charges and agreed to recommend that penitentiary time be capped at a maximum of twelve years for both charges, with any additional suspended time left to the circuit court's discretion.

[¶9.]    After Martin entered his guilty pleas, the State provided a factual basis, detailing law enforcement's high-speed pursuit of the stolen vehicle and the injuries sustained by S.A.R. when Martin ran a red light during the pursuit.  The State did not describe the events surrounding the initial theft of the vehicle but referenced it stating: "The officers that were attempting to do the stop were able to get authorization to pursue the vehicle.  While that is not the normal police department policy, the circumstances under which this vehicle had been stolen made it a higher risk so they were able to get authorization to pursue."

---

1.    The part II information alleged Martin had been convicted of seven prior felonies between 2015 and 2022.  One of these prior felonies was a crime of violence, enhancing the potential punishment to the level of a Class C felony under SDCL 22-7-8, carrying a maximum sentence of life in prison.  *See* SDCL 22-6-1.

[¶10.] Martin agreed the factual basis supported his pleas but denied stealing the vehicle earlier in the day. His counsel further stated that Martin believed he had permission to use the vehicle from someone he knew and denied knowing that it was stolen. The circuit court accepted Martin's pleas, and at Martin's request, sentencing was delayed. The court ordered a presentence investigation (PSI) to be prepared for sentencing.

[¶11.] The PSI included the police reports, which described in detail both the high-speed pursuit and the initial theft of the vehicle earlier in the afternoon, as the official version of the offense. Martin also provided his version of the offense, in which he admitted to driving the stolen vehicle during the high-speed pursuit but denied involvement in the initial theft of the vehicle. Although he claimed during his plea hearing that he believed he had permission to use the vehicle, his version of the offense in the PSI stated that he observed the vehicle running and unoccupied for twenty minutes, and then took it. Martin admitted he had a bloody lip when apprehended, but claimed this occurred during the collision with S.A.R.'s vehicle.

[¶12.] According to the police reports of the initial theft, at approximately 4:30 p.m. on August 25, 2023, Sioux Falls police were dispatched to the area of West 1st Street and North Prairie Avenue following reports of a stolen vehicle and a woman struck by the vehicle. The owner, A.C., told police he had left his vehicle running with the keys in the ignition while speaking to M.A., a woman walking with her child in a stroller. A.C. observed an unknown man enter his vehicle and he attempted to stop him by striking the suspect through the open window. A.C. described the suspect as a Native American male with a crew cut, wearing a maroon

shirt, possibly in his 30s, and of stocky build.[2] The suspect put the vehicle in drive, briefly dragging A.C. before he fell to the ground.

[¶13.] In an attempt to assist, M.A. positioned herself approximately twenty feet in front of the vehicle. Without swerving, the suspect drove forward, striking M.A. and sending her airborne over the hood of the vehicle. M.A., having landed in the middle of the street, suffered a sore wrist, a noticeable bump on her head, and road rash, while A.C. sustained scrapes to his arms and knees.

[¶14.] The responding officers interviewed four other witnesses who corroborated the description of the incident provided by A.C. and M.A. One of these witnesses was a nearby resident with exterior cameras that captured the incident. While the footage confirmed the sequence of events, officers were unable to obtain a clear description of the driver beyond what had been provided by A.C.

[¶15.] The police reports of the subsequent high-speed pursuit indicate that at approximately 10:34 p.m. that same day, law enforcement located Martin driving the stolen vehicle. The rest of the information in these reports is consistent with the events detailed in the State's factual basis during the plea hearing.

[¶16.] In addition to the details of the offense, the PSI provided Martin's personal history, including his unstable upbringing and home life. It revealed a significant criminal record beginning in his youth, with seven prior felonies and ongoing supervision by the Department of Corrections at the time of the current

---

2. The PSI report indicates that Martin is a Native American male and 26 years old. During Martin's initial appearance on August 28, the State acknowledged that it did "not have enough information right now to know if this defendant is the same suspect who originally took the vehicle," but noted that "he does match the general description[.]"

offense. Martin reported frequent institutionalization since his teenage years. The PSI also highlighted a history of substance abuse, with Martin admitting to consuming alcohol several times a week, marijuana daily, and methamphetamine weekly. Martin did not object to any of the information in the PSI report.

[¶17.]     During sentencing, the State recounted Martin's possession of the stolen vehicle, high-speed flight from law enforcement, collisions with multiple vehicles, and subsequent attempt to flee on foot. The State also noted Martin's blood test results taken a few hours after his arrest, which showed a BAC of .03 and the presence of methamphetamine, amphetamine, carboxy THC, dextromethorphan, and Delta-9 THC. The State emphasized Martin's extensive criminal history, substance abuse, and repeated poor decisions. Based on this and the other sentencing factors, the State requested a twelve-year sentence with additional suspended time.

[¶18.]     Martin's counsel requested a lesser sentence, highlighting Martin's remorse, acceptance of responsibility, and his challenging upbringing. His counsel noted that "it is quite clear through his PSI that he did not have a stable home" and "[h]e didn't grow up with positive influences[.]" Martin's counsel argued the sentence should consider Martin's difficult background and allow for personal growth. Martin also addressed the court, expressing remorse for the high-speed chase that resulted in another person's injury.

[¶19.]     The circuit court advised that it had considered all relevant factors and in pronouncing the sentence, the court also stated it was considering uncharged conduct set forth in the police reports, which it described as:

> [W]hen the events that led to all of these circumstances started, there was an incident where it looked like [Martin] entered a vehicle while the victim was distracted and drove away with the victim hanging out of the car window, trying to hit at him, and that person got injuries while doing that. Then while [Martin] was driving away, there was a woman . . . the vehicle struck her . . . sen[ding] her airborne over the hood of the vehicle and she got significant injuries to her head, wrist, hip, and other road rash[.]

[¶20.] The court also addressed Martin's criminal history, noting that at least one of his prior seven felonies involved a violent crime and expressing concern about his parole violations, substance abuse, and inability to maintain employment or housing. The court characterized the recent events as an escalation, stating:

> There is repeated criminal offenses, especially in terms of taking cars from people, and this last one, basically, an active carjacking with someone trying to hang onto the car to prevent him from getting away with it, at least that is what the report indicates to me. And so even though Mr. Martin may not want to act like a bad person, his actions do present a danger to the public.

[¶21.] At this point, Martin's counsel interjected, reiterating that Martin denied involvement in the vehicle theft and the woman's injury, stating: "[T]he allegations regarding taking the vehicle, we have never entered any sort of facts that support that. . . . [W]e do admit to the taking of the vehicle when it was parked idling, but do dispute the allegations regarding hours prior."

[¶22.] The court acknowledged the denial but emphasized its reliance on the PSI, and the statements from counsel and Martin, stating: "I understand that is not what Mr. Martin agrees occurred, but the [c]ourt is not limited to what he stipulates to in support of a guilty plea when the [c]ourt renders a sentence." The court further explained that a PSI is generally a reliable source of information, noting

"that there was quite a distinction between what [Martin] described as the events that led up to these circumstances" and what the official reports indicated about how this all began. Additionally, the court reiterated its concerns regarding Martin's criminal history, viewing this most recent event as an escalation and a threat to public safety.

[¶23.] The circuit court sentenced Martin to twenty years in the state penitentiary with eight years suspended on the vehicular battery conviction and a suspended two-year sentence on the aggravated eluding conviction. The court ordered the sentences to run concurrently to each other, but consecutively to a prior sentence for which Martin was on parole at the time.

[¶24.] At the end of the sentencing hearing, Martin asked the circuit court, "[w]ell, was I just -- was I just sentenced on -- like, a -- what was -- what was the basis of where I was just sentenced? You brought up something totally different from what I am facing and what I am charged with." After an off-the-record discussion occurred between Martin and his counsel, Martin's counsel informed the court that they did not have any other questions.

[¶25.] Martin appeals his sentence, arguing the circuit court abused its discretion in considering the uncharged conduct at sentencing.

## Standard of Review

[¶26.] "[W]e review the sentencing court's decision for an abuse of discretion." *State v. Peltier*, 2023 S.D. 62, ¶ 29, 998 N.W.2d 333, 342 (alteration in original) (citation omitted). "An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full

consideration, is arbitrary or unreasonable." *State v. Lanpher*, 2024 S.D. 26, ¶ 25, 7 N.W.3d 308, 317 (citation omitted). "This Court . . . will not overturn the circuit court's abuse of discretion unless that 'error is demonstrated and shown to be prejudicial error.'" *State v. Mitchell*, 2021 S.D. 46, ¶ 27, 963 N.W.2d 326, 332 (quoting *State v. Klinetobe*, 2021 S.D. 24, ¶ 26, 958 N.W.2d 734, 740).

## Analysis

[¶27.] "Sentencing courts possess broad discretion '[w]ithin constitutional and statutory limits' to determine 'the extent and kind of punishment to be imposed.'" *Id.* ¶ 28, 963 N.W.2d at 333 (alteration in original) (quoting *State v. Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d 75, 83). "The circuit court should weigh, on a case-by-case basis, the traditional sentencing factors of retribution, deterrence, rehabilitation, and incapacitation without giving any particular factor preeminence[.]" *State v. Black Cloud*, 2023 S.D. 53, ¶ 66, 996 N.W.2d 670, 686 (citation omitted). The court "must consider sentencing evidence tending to mitigate or aggravate the severity of a defendant's conduct and its impact on others. Sentencing courts are often required, in this regard, to accurately assess the 'true nature of the offense.'" *State v. Banks*, 2023 S.D. 39, ¶ 18, 994 N.W.2d 230, 235 (citation omitted).

[¶28.] In assessing the nature of the offense, a sentencing court has "wide discretion with respect to the type of information used as well as its source." *State v. Arabie*, 2003 S.D. 57, ¶ 21, 663 N.W.2d 250, 257 (citation omitted). "This broad range of information may include evidence that would be inadmissible at trial, as the rules of evidence do not apply at sentencing hearings." *Banks*, 2023 S.D. 39, ¶ 19, 994 N.W.2d at 235. Thus, a court may rely on an extensive sentencing record

and is not confined "to the information contained in a stipulated factual basis statement used to support a defendant's guilty plea." *State v. Caffee*, 2023 S.D. 51, ¶ 28, 996 N.W.2d 351, 360 (citation omitted). Courts may also consider uncharged conduct if the State proves it by a preponderance of the evidence and the defendant has an opportunity to contest it. *See State v. McKinney*, 2005 S.D. 74, ¶ 18, 699 N.W.2d 460, 466 ("[A] defendant must have the opportunity to contest the uncharged conduct."); *and Mitchell*, 2021 S.D. 46, ¶ 31, 963 N.W.2d at 333 ("Courts may even consider conduct that was uncharged . . . as long as the State proves the conduct by a preponderance of the evidence."). *See also Wabasha v. Leapley*, 492 N.W.2d 610, 612 (S.D. 1992) ("Due process requires a defendant who contests the accuracy of factual information relied upon by a sentencing court be given an opportunity to rebut or explain that information.").

[¶29.] Martin contends that the circuit court abused its discretion in considering the uncharged conduct relating to the initial theft of the vehicle without an express finding that the conduct was proven by a preponderance of the evidence. Martin argues that, despite his denial of the uncharged conduct, the circuit court considered and relied upon the uncharged conduct in making its sentencing decision, and the court therefore should have made explicit findings that the State had proven the uncharged conduct by a preponderance of the evidence.

[¶30.] Yet, this Court has "never required detailed findings of fact to justify a sentence." *State v. Bear Robe*, 2024 S.D. 77, ¶ 16, 15 N.W.3d 460, 466. Further, we have also recognized that when a court does not explicitly state the standard of proof it applied, there is a rebuttable presumption it used the appropriate standard.

*Hoffman v. Hollow Horn*, 2024 S.D. 59, ¶ 15 n.6, 12 N.W.3d 322, 327 n.6.

Accordingly, even if a sentencing court considers uncharged conduct without explicitly finding it was proven by a preponderance of the evidence, this Court will not disturb a sentence within the statutory maximum if the record contains sufficient evidence to support such a finding and the defendant had an opportunity to contest it.

[¶31.]     The record reflects that the circuit court received three accounts of how Martin came to possess the stolen vehicle—one from the police reports attached to the PSI and two conflicting accounts from Martin.  We have never required sentencing courts to accept implausible accounts or conduct "mini-trials" to prove or disprove a defendant's version of events.  *See State v. Carsten*, 264 N.W.2d 707, 709–10 (S.D. 1978).[3]  The record also shows that Martin had an opportunity to contest the uncharged conduct and his denial was explicitly noted by his counsel.[4]  The circuit court "was well within the proper sphere of its sentencing discretion

---

3.     Indeed, this Court has upheld sentences where the court considered the defendant's truthfulness about the convicted offense.  *See State v. Miles*, 2021 S.D. 13, ¶¶ 20–21, 956 N.W.2d 61, 67–68 (holding that the sentencing court properly considered the defendant's lack of remorse and refusal to accept responsibility when it rejected his "incredulous" explanation in the PSI that he may have accidentally downloaded child pornography while intoxicated).  *See also State v. Murphy*, 506 N.W.2d 130, 133 (S.D. 1993); *and State v. Garber*, 2004 S.D. 2, ¶ 33, 674 N.W.2d 320, 328.

4.     Martin briefly states that "the circuit court did not provide a meaningful opportunity for [him] to contest the uncharged conduct[,]" but he neither develops this argument in his brief nor cites any supporting authority.  *See Duerre v. Hepler*, 2017 S.D. 8, ¶ 28, 892 N.W.2d 209, 220 ("It is well-settled that the failure to brief an issue and support an argument with authority waives the right to have this Court review it.").  Martin does not claim the PSI was withheld or that he and his counsel did not have an opportunity to review it prior to the sentencing hearing.

when it elected to reject" Martin's account and his disavowal of any connection to the vehicle's theft earlier in the day. *Carsten*, 264 N.W.2d at 710. In finding Martin perpetrated the original theft, the court clearly credited the detailed police reports and other information available to the court over Martin's version of events, and determined that he had engaged in the uncharged conduct earlier in the afternoon.

[¶32.] While there was no direct evidence identifying Martin as the perpetrator, the totality of the evidence—including his undisputed possession of the recently stolen vehicle, reckless flight from law enforcement, and conflicting explanations as to how he obtained the vehicle—provided a sufficient evidentiary basis for the court to determine, by a preponderance of the evidence, that he committed the theft detailed in the police reports. *See State v. Podzimek*, 2019 S.D. 43, ¶¶ 32–33, 932 N.W.2d 141, 149 (recognizing that the identity of the offender can be proven by circumstantial evidence); *State v. Deubler*, 343 N.W.2d 380, 382 (S.D. 1984) (holding that circumstantial evidence was sufficient to support conviction of grand theft when it included proof that defendant was apprehended driving the stolen vehicle, and that he gave contradicting stories as to how he came into possession); and *State v. Dowty*, 2013 S.D. 72, ¶ 19 n.9, 838 N.W.2d 820, 827 n.9 (quoting *State v. Larkin*, 87 S.D. 61, 67, 202 N.W.2d 862, 865 (1972)) ("[P]ossession of recently stolen property is, in itself, a circumstance from which guilt may be presumed.").

[¶33.] Martin relies on *United States v. Schaefer*, 291 F.3d 932, 938–39 (7th Cir. 2002), to support his claim that the circuit court erred in failing to make a specific finding that the uncharged conduct relied upon by the court was proven by

a preponderance of the evidence. He notes that this Court has itself relied on *Schaefer* to recognize that sentencing courts may consider uncharged conduct in order to familiarize themselves with a defendant. *See Arabie*, 2003 S.D. 57, ¶ 21, 663 N.W.2d at 257; *State v. McCrary*, 2004 S.D. 18, ¶ 8, 676 N.W.2d 116, 120; *McKinney*, 2005 S.D. 74, ¶ 18, 699 N.W.2d at 466. However, the nature of the uncharged conduct in *Schaefer* and its significance under the federal sentencing guidelines is entirely distinct from the uncharged conduct at issue in this case.[5]

[¶34.] Martin also contends that specific fact finding is required under our recent decision in *State v. Feucht,* 2024 S.D. 16, ¶ 30, 5 N.W.3d 561, 570. In *Feucht*, we vacated the defendant's sentence and remanded for resentencing because the circuit court did not explicitly list the aggravating factors supporting a departure from presumptive probation under SDCL 22-6-11. As we noted in that case, when SDCL 22-6-11 was enacted "it imposed new sentencing requirements on circuit courts for offenders convicted of certain offenses." *Id.* ¶ 18, 5 N.W.3d at 567.

[¶35.] However, beyond such legislative mandate, this Court has "never required a sentencing court to file detailed findings of fact to justify a sentence[,]" or

---

5. *Schaefer* relied upon the federal sentencing guidelines, which were mandatory at the time. *See United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) (subsequently holding the federal sentencing guidelines to be advisory rather than mandatory.) *Schaefer* vacated the federal district court's enhanced sentence for wire fraud because the sentencing court failed to make the necessary factual findings that other alleged uncharged conduct, in the form of other prior financial transactions, involved unlawful wire fraud. Unlike in *Schaefer*, where multiple transactions over a substantial period complicated the loss calculation for a specific enhancement under the federal sentencing guidelines, the uncharged conduct here was considered by the circuit court in exercising its discretion to fashion an indeterminate sentence.

to consider uncharged conduct. *State v. Deleon*, 2022 S.D. 21, ¶ 24, 973 N.W.2d 241, 247 (quoting *State v. Bult*, 1996 S.D. 20, ¶ 12, 544 N.W.2d 214, 217). While Martin's conviction for aggravated eluding is a Class 6 felony subject to the sentencing presumption in SDCL 22-6-11, the circuit court was not required to find aggravating circumstances because it imposed a fully suspended sentence for that conviction.

[¶36.]    The circuit court did not abuse its discretion by considering the uncharged conduct at sentencing without making explicit findings. Further, its sentencing decision was not based solely on the uncharged conduct. The court also considered Martin's extensive criminal history, parole violations, and substance abuse. The court emphasized Martin's past conviction for a violent felony and the circumstances of his most recent offense—a high-speed pursuit with law enforcement through residential areas that ended in a collision with another vehicle—concluding that his behavior posed a danger to the public. The court imposed a sentence "within the statutory maximum, and there is no indication that the sentence was outside the range of permissible choices." *State v. Henry*, 2024 S.D. 30, ¶ 28, 7 N.W.3d 907, 913–14. The circuit court appropriately considered multiple sentencing factors beyond the uncharged conduct, reflecting a proper exercise of its discretion.

[¶37.]    We affirm.

[¶38.]    KERN, SALTER, DEVANEY, and MYREN, Justices, concur.